1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9  STATE OF WASHINGTON,

10                        Plaintiff,

11          v.

12  MATHESON FLIGHT EXTENDERS, INC.,

13                        Defendant.

14

CASE NO. C17-1925-JCC

ORDER

15      This matter comes before the Court on Defendant's motion for summary judgment (Dkt.

16  No. 41) and Plaintiff's motion for summary judgment (Dkt. No. 45). Having considered the

17  parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby

18  DENIES Defendant's motion, GRANTS Plaintiff's motion in part, and DENIES Plaintiff's

19  motion in part for the reasons explained herein.

20  **I.    BACKGROUND**

21      Defendant provides terminal and ground handling services for air cargo carriers. (Dkt.

22  No. 42 at 1.) Those services are performed by material handlers, who load and unload sacks,

23  tubs, and trays of mail into and out of the carriers. (Dkt. No. 42-1 at 2.) Material handlers are,

24  therefore, frequently required to lift, push, and carry items weighing over 45 pounds. (*Id.* at 4.)

25      When a material handler or other employee is injured on the job, Defendant uses a

26  systematic process to accommodate the employee's injury by assigning them to light-duty work.

(*See* Dkt. Nos. 44-1 at 7–9, 46-2 at 19, 54-1 at 4–7.) The process begins when a medical provider fills out a Work Status Report ("WSR") or Activity Prescription Form ("APF") outlining how the employee's injury has limited their ability to work. (*See* Dkt. No. 44-1 at 7–8.) The WSR or APF is then sent to Defendant's Department of Claims and Insurance, which drafts a temporary job offer for a "modified" or light duty position. (*Id.* at 9.) Defendant typically creates these light duty positions by taking job duties from other employees and redistributing those duties to the injured worker. (*See* Dkt. No. 54-1 at 4–7.) By redistributing job duties "like . . . chess piece[s]," Defendant can "accommodate almost everyone [who is injured on the job] unless there's simply nothing available." (*See id.* at 6–7.) If nothing is available, then Defendant tries to find the employee light duty work with a third party. (Dkt. No. 46-2 at 19.)

Defendant's efforts to accommodate employees injured on the job are subsidized, in part, by Washington's Department of Labor and Industries. (*See* Dkt. No. 43 at 1.) Under the Department's Return to Work Program, the Department reimburses employers up to 50% of the wages of an employee if the employee is injured on the job and the employer provides them with light duty work. (*Id.*) The Department does not subsidize employers' efforts to accommodate employees who are not injured on the job. (*See id.*)

When such an employee needs an accommodation due to a disability or pregnancy, Defendant uses a different accommodation process. (*See* Dkt. No. 46-4 at 4, 7; Dkt. No. 54-1 at 7.) That process is handled by Defendant's Human Resources Department; the Department of Claims and Insurance is not involved. (Dkt. No. 54-1 at 7.) According to HR Director Shirley Curran, HR has "an interactive conversation with a manager . . . and the employee, review[s] their restrictions, document[s] the conversation, [and] then . . . ha[s] a meeting with the manager to discuss what [light duty work] is available." (Dkt. No. 46-4 at 4.) If a vacant light position is available, then HR purportedly works with the employee to place them in that position. (*Id.*) But if no vacant position is available, Defendant will not create one for the employee. (*Id.* at 4, 7; *see also* Dkt. No. 52 at 13.) Instead, Defendant places the employee on unpaid leave for up to three

months. (Dkt. No. 46-4 at 4, 7.)

On December 27, 2017, Plaintiff filed suit against Defendant, alleging that Defendant's behavior violates the Washington Law Against Discrimination ("WLAD"), Wash. Rev. Code § 49.60.010 *et seq.* (Dkt. No. 1-2 at 5–6.) Plaintiff seeks a permanent injunction enjoining Defendant from further violating the WLAD. (*Id.*) Plaintiff also seeks damages on behalf of seven individual claimants. (*See id.* at 6; Dkt. Nos. 55 at 17 n.9, 56-12 at 3–4.)

## II.  DISCUSSION

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In deciding whether there is a genuine dispute of material fact, the court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Id.* at 255. The court is therefore prohibited from weighing the evidence or resolving disputed issues in the moving party's favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

"The moving party bears the initial burden of establishing the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But once the moving party properly makes and supports their motion, the nonmoving party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed."

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990). Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### B. Defendant's General Accommodations for Employees Who Are Not Injured on the Job

Plaintiff argues that as a matter of law, "[Defendant's] policy of generally refusing to accommodate workers with disabilities not resulting from workplace injuries violates the clear requirements of the WLAD." (Dkt. No. 45 at 19.) The Court construes Plaintiff's challenge as a claim against two distinct policies. The first is Defendant's express policy of creating light duty positions for employees injured on the job while refusing to create such positions for employees with non-work-related disabilities and for employees who are pregnant. (*See* Dkt. No. 61 at 7–8.) The second is Defendant's alleged unwritten policy of refusing to consider even vacant light duty positions for employees who are not injured on the job. (*See* Dkt. No. 45 at 19–20.) The Court will consider those two policies separately.

#### 1. Defendant's Express Policy

With respect to Defendant's express policy, Plaintiff contends that the policy both fails to reasonably accommodate employees with non-work-related disabilities and discriminates against employees because they are pregnant. (*See id.* at 17–22.) The Court concludes that genuine issues of material fact preclude summary judgment on both claims.

##### i. Disability Discrimination

Defendant argues that it can create light duty positions for employees injured on the job while refusing to do so for other employees because the WLAD requires employers to accommodate employees reasonably, not equally, and a request for an accommodation is *per se* unreasonable if it requires an employer to create a new position. (*See* Dkt. Nos. 52 at 2, 57 at 2.) Plaintiff responds that if an employer creates light duty positions for one group of employees

with disabilities, then the employer must create those positions for all employees with disabilities unless doing so would be unreasonable or an undue burden. (*See* Dkt. Nos. 45 at 19–15, 61 at 7–8.) The Court agrees with Plaintiff.

Wash. Rev. Code § 49.60.180(3) prohibits employers from "discriminat[ing] against any person in compensation or in other terms or conditions of employment because of . . . the presence of any sensory, mental, or physical disability." This deceptively simple command does not define "discriminate" or otherwise explain what an employer must do to avoid discriminating against a person with a disability in the terms or conditions of their employment. However, Washington's Administrative Code does provide some guidance. Wash. Admin. Code § 162-22-025 states that it is an unfair practice for an employer to "fail or refuse to make reasonable accommodation for an able worker with a disability . . . unless to do so would impose an undue hardship." Wash. Admin. Code § 162-22-065 offers a broad definition of "reasonable accommodation" while providing a non-exhaustive list of possible reasonable accommodations. And Wash. Admin. Code § 162-22-065 helps define "undue hardship."

These regulations show that "reasonable accommodation" and "undue hardship" are fact-dependent concepts that are rarely amenable to bright-line rules. To determine if an accommodation is an "undue hardship," for example, one must consider "if the cost or difficulty [of an accommodation] is unreasonable in view of . . . [t]he size of and the resources available to the employer," as well as "other appropriate considerations." Wash. Admin. Code § 162-22-075(1)–(3). Given that these "appropriate considerations" differ in each case, the Washington Supreme Court has repeatedly emphasized, "Generally, whether an employer made reasonable accommodation or whether the employee's request placed an undue burden on the employer are questions of fact for the jury." *Pulcino v. Fed. Express Corp.*, 9 P.3d 787, 795 (Wash. 2000); *see also, e.g.*, *Phillips v. City of Seattle*, 766 P.2d 1099, 910–11 (Wash. 1989) ("[W]hether reasonable accommodation was made by an employer is a question of fact for the jury.").

*Pulcino v. Federal Express Corp.*, 9 P.3d 787 (2000), offers a relevant example of this

principle. In *Pulcino*, a part-time employee for FedEx suffered a lumbar strain while working on the job. *Id.* at 791. The employee alleged that FedEx violated the WLAD when it refused to consider her for vacant light duty positions because she was a part-time worker. *Id.* at 791, 795. The Washington Supreme Court concluded that it was up to the jury to decide if it was reasonable for FedEx to refuse to offer vacant light duty positions to part-time employees. *Id.* at 795–96. "An employer," the court explained, "should not be able to hide behind a policy of not providing light duty for part-time employees when such a policy is unreasonable." *Id.* at 796.

The same holds true here: Defendant should not be able to hide behind a policy of not creating light duty positions for employees with non-work-related disabilities when such a policy is unreasonable. Admittedly, this result is not compelled by *Pulcino*. Unlike Defendant, the employer in *Pulcino* did not refuse to create light duty positions for a specific group of employees; the company refused to consider those employees for vacant positions. *See* 9. P.3d at 791, 795. But *Pulcino* reinforces the principle that a jury ordinarily determines whether an accommodation is reasonable or poses an undue hardship, and there is nothing inherent to creating new positions that makes it an unreasonable accommodation or an undue hardship in every circumstance. That is especially true where, as here, Defendant admits that there is "not a whole lot involved" in reassigning tasks; that employees can be "moved like a chess piece to another location, to another position"; and that it "can accommodate almost everyone unless there's simply nothing available." (Dkt. No. 54–1 at 6–7.)

Washington Supreme Court cases are not to the contrary. True, there are isolated statements in cases that "an employer . . . is not required to . . . create a new position." *Pulcino*, 9 P.3d at 795; *see also Riehl v. Foodmaker, Inc.*, 94 P.3d 930, 935 n.2 (Wash. 2004) ("The employer does not have a duty to . . . create a new position."); *Davis v. Microsoft Corp.*, 70 P.3d 126, 133 (Wash. 2003) (parenthetically quoting *Pulcino*, 9 P.3d at 795); *Dean v. Municipality of Metro. Seattle-Metro*, 708 P.2d 393, 634 (Wash. 1985) ("Metro had no duty to create a job for Dean."). But none of those cases involved a claim by an employee that their employer should

have reasonably accommodated them by creating a new position (light duty or otherwise). *See Riehl*, 94 P.3d at 148–49; *Davis*, 70 P.3d at 131–35; *Pulcino*, 9 P.3d at 795–96; *Dean*, 708 P.2d at 636 ("Dean never claimed that Metro had a duty to create a new job for him."). Given that no such claims were at issue, it is unlikely that the Washington Supreme Court intended to say in *dictum* that it is always unreasonable to ask an employer to create a temporary light duty position for an employee with a disability—even if creating that position were the easiest thing in the world.

To support its rigid rule that creating light duty positions is *per se* unreasonable, Defendant points to a 1996 guidance from the Equal Employment Opportunity Commission. *See EEOC Enforcement Guidance: Workers' Compensation and the ADA*, 1996 WL 33161342, at 12–13 (1996). The guidance appears to endorse Defendant's rule with respect to the ADA, saying that an employer may create light duty positions only for employees injured on the job but must offer vacant, or "reserve[d]," light duty positions on equal terms.[1] *Id.* at 12–13. However, the Washington Supreme Court has stressed that "the WLAD is broader than its federal counterpart, [the ADA]," and it has "declined to use federal interpretations of the ADA to constrain protections offered by the WLAD."[2] *Taylor v. Burlington N. R.R. Holdings, Inc.*, 444

---

[1] The guidance offers the following hypothetical example:

> R creates light duty positions for employees when they are occupationally injured if they are unable to perform one or more of their regular job duties. CP can no longer perform functions of her position because of a disability caused by an off-the-job accident. She requests that R create a light duty position for her as a reasonable accommodation. R denies CP's request because she has not been injured on the job. R has not violated the ADA.

*EEOC Enforcement Guidance*, 1996 WL 33161342, at 13. The guidance then asks, "If an employer **reserves light duty positions for employees with occupational injuries**, does the ADA require it to **consider reassigning an employee with a disability** who is not occupationally injured to such positions as a reasonable accommodation?" *Id.* It answers that question, "Yes." *Id.*

[2] It is for this same reason that the Court does not give great weight to federal cases holding that the ADA does not require an employer to create positions.

P.3d 606, 609 (Wash. 2019). Moreover, even with respect to the ADA, an EEOC guidance is afforded weight only to the extent it is persuasive. *See Young v. United Parcel Service, Inc.*, 575 U.S. 206, 224–25 (2015). The 1996 guidance is unpersuasive because it does not try to justify the bright-line distinction it draws between creating positions and offering vacant positions. In fact, the guidance offers an example that shows how specious that distinction can be:

> If it is determined that the only effective accommodation is to restructure CP's [an employee injured off-the-job] position by redistributing the marginal functions, and the restructured position resembles a light duty position, R [the employer] must provide the reasonable accommodation unless it can prove that it imposes an undue hardship.

*EEOC Enforcement Guidance*, 1996 WL 33161342, at 13. If it is sometimes reasonable to require that an employer pare-down an injured employee's existing job duties by reassigning marginal functions to other employees, then it is sometimes reasonable to require that the employer "create" a new position by assigning the marginal functions of other employees to that injured employee.

Although it is sometimes reasonable to require an employer to accommodate an employee by creating a light duty position, it may often be unreasonable to impose such a requirement. It might, for example, take too much time and effort for the employer to train the employee in the new position. Or it might significantly disrupt the employer's operations if the employer must alter which employees do what tasks. These factors are, ordinarily, for the jury to consider. *See Pulcino*, 9 P.3d at 795.

Given that a jury ordinarily decides these issues, the Court declines to take those issues away from the jury in this case. Defendant admits that it was able to "accommodate almost everyone" who was injured on the job by providing them with light duty work. (*See* Dkt. No. 54-1 at 7.) Defendant's ability to create this light duty work suggests that it might have been able to create similar work for employees with non-work-related disabilities. Yet, Defendant's efforts to create light duty positions were heavily subsidized by Washington. (*See* Dkt. No. 43 at 1.) Defendant's manager of safety and training, John Miller, states that without those subsidies,

Defendant could not have afforded to create light duty positions. (*See id.* at 1–2.) It is up to the jury to weigh the evidence and decide whether Defendant could have reasonably accommodated employees with non-work-related disabilities by creating light duty positions for them or whether creating those positions would have unduly burdened Defendant. Accordingly, the Court DENIES Defendant's and Plaintiff's motions for summary judgment as to this issue.

### ii.    Sex Discrimination

Plaintiff also argues that Defendant's express policy discriminates against employees because they are pregnant.[3] (*See* Dkt. No. 45 at 20–22.) The Court understands Plaintiff's argument to be a disparate impact claim and will analyze it as such. (*See id.* at 22) ("[Defendant] made a business decision—based on a discriminatory motive—to deny light duty for pregnant employees.").

In Washington, pregnancy discrimination is considered a form of sex discrimination. *See Hegwine v. Longview Fibre Co., Inc.*, 172 P.3d 688, 693 (Wash. 2007). Pregnancy discrimination claims are therefore analyzed using the Supreme Court's three-step, burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 702 (1973). *See Hegwine*, 172 P.3d at 696. Under that framework, the plaintiff must first establish a *prima facie* case of unlawful discrimination. *See id.* The plaintiff usually establishes a *prima facie* case by showing (1) they belong to a protected class (*e.g.*, that they were pregnant); (2) they suffered an adverse employment action; and (3) the adverse employment action was due to their protected status. *See id.* If the plaintiff establishes a *prima facie* case, "the burden shifts to the [defendant], who must articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cty.*, 404 P.3d 464, 473 (Wash. 2017). "The

---

[3] Defendant does not appear to move for summary judgment on this issue. Defendant argues in its motion that Plaintiff has failed to establish that Defendant has a pattern and practice of disability discrimination, but Defendant does not discuss sex discrimination. (*See* Dkt. No. 41 at 23–25.) And even if Defendant did move for summary judgment on this issue, the Court would deny that motion for the reasons explained below.

[defendant's] burden is merely one of production," and "[t]he [defendant] need only introduce 'evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *Id.* (emphasis in original) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510 (1993)). Once the defendant offers a nondiscriminatory reason, the burden shifts back to the plaintiff to produce evidence that the defendant's reason was pretext for discrimination. *Id.* The ultimate question is, however, whether a reasonable jury could credit either the plaintiff's or the defendant's story. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 766 (7th Cir. 2016) (holding genuine issues of material fact existed without conducting a *McDonnell Douglas* analysis); *Hill v. BCTI Income Fund-I*, 23 P.3d 440, 449 (Wash. 2001). If a jury could believe either side, then summary judgment is inappropriate. *Ortiz*, 834 at 766; *Hill*, 23 P.3d at 449 (quoting *Carle v. McChord Credit Union*, 827 P.2d 1070, 1077 (Wash. 1992)) ("[I]t is the jury's task to choose between [competing] inferences.").

Here, Plaintiff has established a *prima facie* case of unlawful sex discrimination. Employees who are pregnant are plainly a protected class. *Hegwine*, 172 P.3d at 693. In addition, Defendant treats those employees differently in the terms and conditions of their employment because it does not offer them light duty positions to the same extent that it offers light duty to other employees who are similarly situated in their ability to work. (*See* Dkt. No. 46-2 at 28.) This facially disparate treatment gives rise to an inference of discrimination.

Although plaintiff has raised an inference of discrimination, a jury could conclude that Defendant adopted and applied its light duty policy without regard to the policy's effect on employees who are pregnant.[4] Specifically, a jury could conclude that Defendant adopted its light duty policy because Washington subsidizes the wages of employees who are given light duty only if the employee is injured on the job. (*See* Dkt. No. 43 at 1–2.) A jury could further

---

[4] Defendant has not moved for summary judgment on the ground that a reasonable jury must conclude that it adopted its light duty policy for nondiscriminatory reasons. The Court does not take a position on that issue.

conclude that Defendant applied its policy to employees who are pregnant because they fall outside of the facially neutral category of employees who are injured on the job. This alternative motive is not unlawful under a disparate treatment theory even if the policy has a disparate impact on employees who are pregnant.[5]

Given that a reasonable jury could conclude that Defendant had a lawful motive for adopting its light duty policy, the Court DENIES Plaintiff's motion for summary judgment on this issue.

### 2. Defendant's Alleged Policy

In addition to challenging Defendant's express policy, Plaintiff challenges Defendant's "general refusal to consider light duty for workers with disabilities not resulting from workplace injuries." (Dkt. No. 45 at 20.) Defendant does not seem to dispute that it must consider assigning those workers to vacant light duty positions; Defendant instead argues that it does consider those workers for vacant positions. (*See* Dkt. No. 52 at 10–12.) The Court concludes that a genuine issue of material fact precludes summary judgment as to this issue.

#### i. Plaintiff's Burden of Proof

As a threshold matter, the Court must determine what Plaintiff must prove to be entitled to summary judgment. Defendant argues that Plaintiff must prove that Defendant engaged in a "pattern and practice of discrimination." (*See* Dkt. No. 52 at 10.) Plaintiff contends that the "pattern or practice" standard is unique to Title VII and that some lower burden of proof—perhaps even a single violation of the WLAD—is required here. (*See* Dkt. No. 61 at 8–9.)

Plaintiff is mistaken. In *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336 n.16 (1977), the Supreme Court made clear that "[t]he 'pattern or practice' language in § 707(A) of Title VII was not intended as a term of art." Rather, the phrase "pattern

---

[5] Although disparate impact claims are allowed under the WLAD, *see Kumar v. Gate Gourmet, Inc.*, 325 P.3d 193, 202 (Wash. 2014), Plaintiff does not appear to bring a disparate impact claim here, (*see id.* at 22).

or practice" merely describes the Government's burden "to demonstrate that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers." *See id.* at 360. The Government's burden, the Supreme Court explained, is the same one that class action plaintiffs share when they allege a "broad-based policy of employment discrimination": to show that a discriminatory policy existed. *See id.* at 358–60; Merrick T. Rossein, *1 Employment Discrimination Law and Litigation* § 2:28 (2019) (explaining that the "pattern or practice" method of proof is not limited to claims under 42 U.S.C. § 2000e-6).

The same burden applies here. Plaintiff seeks both damages for individual claimants and an injunction preventing Defendant from enforcing its alleged discriminatory policy. (Dkt. No. 1-2 at 5–6.) To obtain damages, Plaintiff need only show a single instance of discrimination. But to obtain an injunction, Plaintiff must prove that Defendant had a discriminatory policy. *Compare Melendes v. Arpaio*, 695 F.3d 990, 998 (9th Cir. 2012) (holding plaintiffs had standing to pursue an injunction against a sheriff's office where the district court found the office "engaged in a pattern or practice" of unconstitutional stops), *with Brown v. Trs. of Bos. Univ.*, 891 F.2d 337, 361 (1st Cir. 1989) (holding plaintiff was not entitled to an injunction prohibiting Boston University from discriminating where plaintiff "established that she alone had been the victim of sex discrimination"). And to do that, Plaintiff must show that "discrimination was [Defendant's] standard operating procedure rather than the unusual practice." *Teamsters*, 431 U.S. at 336.

### iii. Whether Plaintiff Has Met Its Burden of Proof

Having concluded that Plaintiff must show that Defendant had a "pattern or practice" of discriminatory behavior, the Court must decide if Plaintiff's pattern or practice evidence is sufficient to survive summary judgment. The Court concludes that it is.

"[T]he definition of a pattern or practice is not capable of a precise mathematical formulation," and the evidence required to prove a pattern or practice depends on the nature of the case. *See Ste. Marie v. E. R.R. Ass'n*, 650 F.2d 395, 406 (2d Cir. 1981). In cases where a

plaintiff lacks direct evidence that an employer adopted a discriminatory policy, the plaintiff often demonstrates a pattern or practice "through a combination of strong statistical evidence of disparate impact coupled with anecdotal evidence of the employer's intent to treat the protected class unequally." *Mozee v. Am. Commercial Marine Serv. Co.*, 940 F.2d 1036, 1051 (7th Cir. 1991). But "[i]f there [is] evidence that a policy of discrimination [was] adopted, perhaps two or even one confirmatory act [is] enough." *Ste. Marie*, 650 F.2d at 406.

Here, Plaintiff offers two main forms of evidence to show that Defendant adopted and implemented a policy of refusing to consider vacant light duty positions for employees who are not injured on the job. The first is direct evidence from Chris Matthiesen, a supervisor at Defendant's Seattle location from December 2015 to October 2017, who testified that his station manager, Gail Drelling, had a "position against assigning employees light duty unless they were injured at work."[6] (*See* Dkt. No. 49 at 3.) According to Mr. Matthiesen, Ms. Drelling made her position known to the shift leads and supervisors in Seattle. (*See id.*) In fact, she allegedly "jumped on" Mr. Matthiesen when he assigned light duty work to a person with a non-work-related disability, "saying that there were no light duty assignments if not work related." (*Id.*) Mr. Matthiesen acknowledges that he and other supervisors sometimes circumvented Ms. Drelling by providing light duty tasks "on an ad hoc basis," but he states that Ms. Drelling's stance made it difficult for employees to receive light duty tasks on equal terms if they were not

---

[6] Defendant argues that the Court should not consider Mr. Matthiesen's declaration because Plaintiff did not comply with Federal Rule of Civil Procedure 26, Plaintiff improperly withheld the declaration as protected work product, and Mr. Matthiesen's testimony is not based on personal knowledge. (*See* Dkt. No. 52 at 19–21.) The first challenge is without merit: Plaintiff identified Mr. Matthiesen as an individual with knowledge on June 21, 2019. (Dkt. No. 62-4 at 5.) The second challenge was waived because Defendant never moved to compel Plaintiff to disclose the declaration. *See Scot May v. Pilot Travel Ctrs. LLC*, 2006 WL 3827511, slip op. at 6 (S.D. Ohio 2006) ("Plaintiff has never moved to compel production of the notes and cannot now complain of their non-disclosure."). The third challenge is conclusory and contradicted by Mr. Matthiesen's own testimony, which describes, among other things, how Ms. Drelling "personally instructed" him "that light duty was not given to employees with non-work related injuries." (Dkt. No. 49 at 3.)

injured on the job. (*See id.* at 3, 5.)

The second form of evidence is anecdotal evidence from three employees who sought accommodations but were not injured on the job. That evidence suggests that for two of those employees, Defendant determined that no light duty work was available prior to engaging the employee in its interactive process for finding reasonable accommodations. (*See* Dkt. Nos. 46-19 at 3, 56-4 at 5–7.) A reasonable jury could therefore infer that "it was a foregone conclusion that no light duty [work] would be offered." (Dkt. No. 45 at 24.) For the other employee, it appears that Defendant did not invite the employee to engage in the interactive process at all. (*See* Dkt. No. 42-1 at 36, 38, 40, 42.)

Defendant argues that Plaintiff's evidence is insufficient because it is "statistically insignificant." (Dkt. No. 52 at 14.) But Plaintiff is not required to introduce statistically significant evidence when it presents direct evidence that Defendant adopted a discriminatory policy and supports that evidence with anecdotal information. *See Ste. Marie*, 650 F.2d at 406. The ultimate question is, after all, whether a reasonable jury could conclude that Defendant's "standard operating procedure" was to deny light duty work to employees who were not injured on the job. *See Teamsters*, 431 U.S. at 336. A reasonable jury could come to that conclusion here.

Although a reasonable jury could conclude that Defendant had a discriminatory policy, a reasonable jury could also come to the opposite conclusion. A jury could, for example, credit the account of Ms. Drelling, who disputes Mr. Matthiesen's testimony and says that while she could not recall employees coming to her with a non-work-related injury, she would have still sought light duty work for them. (*See* Dkt. No. 54-4 at 4.) In addition, a jury could conclude that because Defendant provided light duty work to at least 10 employees with non-work-related injuries from 2012 through 2018, Defendant's policy was to accommodate such employees. (*See* Dkt. No. 46-8 at 5–12.) That evidence must be weighed by a jury, not the Court. *See Tolan*, 572 U.S. at 657. Accordingly, the Court DENIES Plaintiff's and Defendant's motions for summary

judgment as to this issue.

## C. Plaintiff's Claim on Ambreada Richardson's Behalf

Plaintiff and Defendant move for summary judgment on Plaintiff's claim that Defendant failed to accommodate Ambreada Richardson's physical limitations related to her pregnancy. Both parties assume that a reasonable accommodation analysis applies to Plaintiff's claim. (*See* Dkt. No. 45 at 18 n.7, 22–25; Dkt. No. 52 at 16–18.) However, that analysis appears to be inapplicable under unambiguous precedent from the Washington Supreme Court.

In 2007, the Washington Supreme Court held in *Hegwine v. Longview Fibre Co.*, 172 P.3d 688, 691–95 (Wash. 2007), that the WLAD protects people who are pregnant differently than it protects people with disabilities. Under the WLAD, a person with a disability must be afforded reasonable accommodations by an employer unless accommodating the person would unduly burden the employer. *See id.* at 695 (citing Wash. Admin. Code § 162-22-025(2)). A person who is pregnant, on the other hand, must be treated equally by an employer unless the employer can demonstrate that its unequal treatment is a business necessity. *See id.* & n.5 ("Should an employer hire a pregnant employee, that employee is to receive the same treatment as any other employee with physical limitations."). This distinction stems from the text of Washington statutes and regulations. *See id.* at 694–05. "Neither the WLAD nor its interpretive regulations," the Washington Supreme Court concluded, "call for an accommodation analysis in pregnancy related employment discrimination cases," and "it is not for this court to impose such an accommodation analysis where the legislature has not seen fit to do so." *Id.*

Washington's legislature saw fit to impose an accommodation analysis 10 years later when it passed a bill requiring employers to reasonably accommodate pregnancy and pregnancy-related health conditions. *See* 2017 Wash. Sess. Laws 1106–07. The bill, which became effective July 23, 2017, *see id.* at 1109, makes it is an "unfair practice for any employer to: (a) fail or refuse to make reasonable accommodation for an employee for pregnancy, unless the employer can demonstrate that doing so would impose an undue hardship on the employer's program,

enterprise, or business." Wash. Rev. Code § 43.10.005(2)(a). The bill authorizes the Washington Attorney General to enforce its reasonable accommodation requirement. Wash. Rev. Code § 43.10.005(6). It also provides a private cause of action for damages and injunctive relief. *See id.*

Plaintiff does not argue that this new law allows it to bring a reasonable accommodation claim on Ms. Richardson's behalf (perhaps because the law became effective after Ms. Richardson's claim arose). (*See* Dkt. No. 1-2 at 3–4.) Instead, Plaintiff argues that the reasonable accommodation framework applies because pregnancy is a condition affecting a person's reproductive system within the meaning of Wash. Rev. Code § 49.60.040(7)(c)(i). (*See* Dkt. No. 45 at 18 n.7, 23.) But Plaintiff's interpretation of Wash Rev. Code § 49.60.040(7)(c)(i) cannot be squared with *Hegwine*. While it is true that Wash Rev. Code § 49.60.040(7)(c)(i) defines "disability" to include "condition[s]" that "affect[]" a person's "reproductive [system]," that definition became effective on July 22, 2007—over four months before the Washington Supreme Court issued its opinion in *Hegwine*. *See* 2007 Wash. Sess. Laws. 1390. Nevertheless, *Hegwine* held on no uncertain terms that "neither pregnancy nor pregnancy related medical conditions are disabilities under Washington law." 172 P.3d at 694. In so holding, *Hegwine* necessarily rejected Plaintiff's interpretation of Wash Rev. Code § 49.60.040(7)(c)(i).

Given that *Hegwine* rejected Plaintiff's interpretation, Plaintiff's claim must be analyzed as claim of disparate treatment based on sex, not disability. As previously discussed, such claims are analyzed under the *McDonnell Douglas* framework. Because neither party has briefed Plaintiff's claim under that framework, the Court DENIES Plaintiff's and Defendant's motions for summary judgment on this issue.

### D. Other Individual Claimants

In addition to seeking relief for Ms. Richardson, Plaintiff seeks relief for six other individual claimants. Two of those claimants—Nita Breeden and Jung Cha—had non-work-

related disabilities.[7] (Dkt. No. 44-1 at 70–81). The other four claimants—Dennis AhFook, John Conavad, Faysal Hussein, and Melody Cook—had work-related disabilities. (*Id.*) Defendant moves for summary judgment dismissal of Plaintiff's claims on behalf of those individual claimants on the following grounds: (1) Plaintiff failed to timely disclose the names and contact information of the individual claimants as required by Federal Rule of Civil Procedure 26(a)(1)(A)(i); (2) Ms. Breeden and Mr. Cha failed to provide Defendant with restrictions applicable to their positions so that Defendant could make a reasonable accommodation for them; and (3) the claims on behalf of Mr. AhFook, Mr. Conavad, Mr. Hussein, and Ms. Cook are barred by the workers' compensation exclusivity doctrine. (*See* Dkt. No. 41 at 19–22).

### 1.   Plaintiff's Initial Disclosures

Under Federal Rule of Civil Procedure 26(a)(1)(A)(i), a party must provide the opposing party the name and contact information "if known" of "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." Rule 26(e)(1) further requires a party to "supplement" any disclosure made under Rule 26(a) "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

Generally, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial." Fed. R. Civ. P. 37(c)(1). Exclusion is not appropriate, however, when "the failure was substantially justified or harmless." *Id.* Failure to disclose is "substantially justified" if it is "justified to a degree that could satisfy a reasonable person."

---

[7] Plaintiff originally sought relief for two additional claimants with non-work-related disabilities. (*See* Dkt. No. 41 at 20.) Plaintiff has subsequently withdrawn its claims for damages on their behalf. (*See* Dkt No. 55 at 17 n.9.)

*Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

Here, Plaintiff timely disclosed the names of only two additional claimants. Although Plaintiff confidently asserts that it identified all six additional claimants "at least three months prior to the close of discovery," (*see* Dkt. No. 61 at 13), it points to interrogatory responses listing only two of the six, (*see* Dkt. No. 44-1 at 63–64) (listing John Conavad and Melody Cook as employees whom Defendant failed to reasonably accommodate). Plaintiff disclosed the other four claimants after the close of discovery. (*See id.* at 70, 72.)

Although Plaintiff failed to disclose four claimants before the close of discovery, its failure is substantially justified by Defendant's behavior. In July 2018, Defendant first disclosed that the four claimants had "been provided with an accommodation for an injury or disability." (Dkt. No. 44-1 at 51–57.) However, Plaintiff could not determine if those accommodations violated the WLAD because Defendant refused to produce documents relating to the accommodations it provided to the four claimants. (*See* Dkt. No. 38 at 3–6.) Plaintiff moved to compel Defendant to produce those documents, and the Court ordered Defendant to produce the documents by May 23, 2019. (*Id.*) But Defendant did not produce the documents until July 3, 2019. (Dkt. No. 55 at 16.) Then, only 12 days after it received and reviewed those documents, Plaintiff supplemented its discovery responses to identify the four claimants. (Dkt. No. 56-12 at 3–5.) The timing of Plaintiff's response was therefore due to Defendant's behavior,[8] not Plaintiff's "subterfuge" or "deliberate delay." *See Benson v. Tocco, Inc.*, 113 F.3d 1203, 1209

---

[8] The Court acknowledges that Defendant was "substantially justified" in its decision to initially withhold the documents Plaintiff requested. (Dkt. No. 38 at 6.) However, Defendant has not explained why it failed to produce the documents until just five days before the discovery cutoff. And in any event, the Court will not preclude Plaintiff from pursuing potentially viable claims absent "willfulness, fault, or bad faith" on the part of Plaintiff. *See R&R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1247 n.1 (9th Cir. 2012). Those factors are not present here. If Defendant feels that it may be prejudiced by the addition of these claims, then it can move for limited additional discovery, which is the more appropriate remedy in these circumstances. *See Downtown Action to Save Hous. v. Midland Corp. Tax Credit XIV, LP*, Case No. C18-0138-JCC, Dkt. No. 65 at 4 (W.D. Wash. 2019).

(11th Cir. 1997).

Given that Defendant was largely responsible for Plaintiff's failure to disclose the names of the other individual claimants, Plaintiff may pursue claims on behalf of those individuals. The Court therefore DENIES Defendant's motion for summary judgment as to this issue.

2.    <u>Evidence of Disability Discrimination Against Ms. Breeden and Mr. Cook</u>

As discussed previously, the WLAD requires an employer to reasonably accommodate an employee's disability unless doing so would pose an undue hardship. Wash. Admin. Code § 162-22-025. To establish a *prima facie* case that an employer failed to reasonable accommodate an employee's disability, the employee must show that they (1) had a sensory, mental, or physical impairment that substantially limited their ability to perform their job; (2) they were (a) qualified to perform the essential functions of their current job or (b) qualified to fill an alternative position; (3) the employee gave the employer notice of their impairment and its accompanying limitations; and (4) the employer failed to affirmatively adopt measures that were available to it and medically necessary to accommodate the impairment. *See Davis*, 70 P.3d at 131, 134. In its motion for summary judgment, Defendant challenges the sufficiency of Plaintiff's evidence with respect to the third element of Plaintiff's *prima facie* case, (*see* Dkt. No. 41 at 20–21), and Plaintiff argues that a genuine issue of material fact precludes summary judgment on that element, (*see* Dkt. No. 55 at 26–27).[9] The Court will therefore limit its analysis to the third element of Plaintiff's *prima facie* case.

---

[9] In its reply, Defendant challenges the sufficiency of Plaintiff's evidence with respect to the remaining elements of Plaintiff's *prima facie* case. (*See* Dkt. No. 57 at 9.) The Court "need not consider arguments raised for the first time in a reply brief," *see Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007), and it declines to do so here. As the moving party, Defendant bore "the initial responsibility of . . . identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 447 U.S. at 323. Defendant's motion for summary judgment identified only one alleged defect in Plaintiff's *prima facie* case: "that Ms. Breeden and Mr. Cha did not provide [Defendant] with restrictions applicable to their positions." (Dkt. No. 41 at 20.)

###### i.    Ms. Breeden

Plaintiff has offered evidence showing that Ms. Breeden notified Defendant of her physical impairment and its accompanying limitations. On February 28, 2017, Defendant sent Ms. Breeden a letter stating, "We are in receipt of your Medical Provider's (Proliance Orthopedic Associates) note dated February 21, 2017, from your evaluation of you and your Workers Comp injury with another employer. The report indicates that you had [REDACTED] on February 8, 2017 and are unable to perform the duties of your current position." (Dkt. No. 42-1 at 31.) The report referenced in Defendant's letter is also referenced in Defendant's "Reasonable Accommodation and Interactive Process Record." (*See* Dkt. No. 56-4 at 3.) Taken together, this evidence establishes, at the very least, a genuine issue as to whether Ms. Breeden notified Defendant of her physical impairment and its accompanying limitations. The Court therefore DENIES Defendant's motion for summary judgment as to this issue.

###### ii.    Mr. Cha

Plaintiff has also offered evidence showing that Defendant was on notice of Mr. Cha's physical impairment and its accompany limitations. Plaintiff points to two pieces of evidence. (*See* Dkt. No. 55 at 27) (citing Dkt. Nos. 42-1 at 36, 46-28 at 2). The first is an email exchange between Ms. Drelling and Kathy Booth. (*See* Dkt. No. 42-1 at 36.) In that exchange, Ms. Drelling informed Ms. Booth that Mr. Cha was injured while working with another employer. (*See id.* at 36.) Ms. Drelling described the nature of Mr. Cha's injuries and noted that "his doctor placed him on modified duty with [his other employer]." (*See id.*) The second is an APF that Mr. Cha submitted to Defendant. (*See* Dkt. No. 46-28 at 2.) These pieces of evidence belie Defendant's assertion that "it is undisputed that . . . Mr. Cha did not provide [Defendant] with restrictions applicable to their positions." (Dkt. No. 41 at 20.) Those facts are disputed, and a genuine issue of fact precludes summary judgment. Accordingly, the Court DENIES Defendant's motion for summary judgment as to this issue.

//

3.     The Worker's Compensation Exclusivity Doctrine

In *Reese v. Sears, Roebuck & Co.*, 731 P.2d 497, 499, 502–503 (Wash. 1987), the Washington Supreme Court held that the exclusive remedy provision of the Industrial Insurance Act ("IIA"), Wash. Rev. Code § 51.04.010 *et seq.*, did not preclude failure to accommodate claims under the WLAD. The court's holding was broad: it explained that no conflict exists between the IIA and the WLAD because the IIA compensates an employee for their "workplace physical injury" whereas the WLAD compensates an employee for the "subsequent injury arising from [their] employers' alleged [disability] discrimination." *Id.* at 503. The *Reese* court was also unconcerned with the possibility of double recovery, saying that the IIA and WLAD address "two distinct wrongs" and that any overlapping IIA benefits can be deducted from an employee's discrimination damages. *See id.*

Despite the broad holding in *Reese*, Defendant argues that the IIA bars Plaintiff's claims on behalf of Mr. AhFook, Mr. Conavad, Mr. Hussein, and Ms. Cook because those individuals did not suffer a "separate and distinct injury" such as "emotional distress." (*See* Dkt. No. 57 at 10.) This argument correctly states the legal test for whether the IIA bars a claim: a plaintiff may bring a claim for damages only if those damages stem from "a separate injury not related to the workplace injuries the IIA is designed to compensate." *Birklid v. Boeing Co.*, 904 P.2d 278, 872 (Wash. 1995). But the argument ignores what *Reese* already decided: an employee is separately injured whenever they are harmed by an employer's discriminatory response to an IIA-compensable injury. *See Goodman v. Boeing Co.*, 899 P.2d 1265, 1268 (Wash. 1995). Consequently, a plaintiff may sue under the WLAD to recover for that separate injury even if they did not suffer emotional damages and even if they might receive overlapping compensation under the IIA. *See id.* at 1268.

Given that Plaintiff need not prove whether Mr. AhFook, Mr. Conavad, Mr. Hussein, or Ms. Cook suffered emotional distress, Plaintiff's failure to provide such evidence at this stage is immaterial. The Court therefore DENIES Defendant's motion for summary judgment as to this

issue.

### E. Defendant's Affirmative Defenses

Plaintiff moves for summary judgment dismissal of the following affirmative defenses raised by Defendant: (1) waiver; (2) laches; (3) ratification; (4) judicial estoppel; (5) equitable estoppel; (6) unclean hands; (7) the after-acquired evidence doctrine; and (8) failure to mitigate. (Dkt. No. 45 at 25–28.) The Court concludes that each defense should be dismissed.

#### 1. Timeliness

As a threshold matter, Defendant argues that Plaintiff's motion is premature because Defendant has not had the opportunity to conduct discovery regarding the six additional claimants. (Dkt. No. 52 at 18.)

Under Rule 56(d)(2), a court may give the party opposing summary judgment time to take discovery if the party makes "(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." *Emp'rs Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129 (9th Cir. 2004) (quoting *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986)). "The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001). "The district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past, or if the movant fails to show how the information sought would preclude summary judgment." *Cal. Union Ins. Co. v. Am. Diversified Sav. Bank*, 914 F.2d 1271, 1278 (9th Cir. 1990).

Defendant has not met this burden. Defendant does not specifically identify relevant information, explain how that information might relate to a particular defense, or offer any basis to believe that the information exists. Instead, Defendant states that it intends to depose the additional claimants and "will explore facts related to its affirmative defenses with respect to the

individual claimants." (Dkt. No. 52 at 18.) This broad statement does not justify a Rule 56(d)(2) continuance, especially when the information relating to several defenses—waiver, ratification, estoppel, unclean hands, after-acquired evidence—could already be in Defendant's possession. The Court therefore DENIES Defendant's request for a Rule 56(d)(2) continuance.

2.      The Merits of Plaintiff's Motion

Having concluded that Plaintiff's motion is not premature, the Court will address the merits of the motion.

i.      *Laches*

Plaintiff argues that the laches defense does not apply in this case because Washington is the named plaintiff and is suing in the public interest. (Dkt. No. 45 at 25.) Defendant responds that the defense is still applicable to the individual claimants themselves. (Dkt. No. 52 at 18.) The Court agrees with Plaintiff.

In Washington, the laches defense does not apply "to actions in the name of or for the benefit of the State."[10] *Washington v. LG Elecs., Inc.*, 375 P.3d 636, 642 (Wash. 2016). The laches defense does apply, however, if Washington "is a mere formal plaintiff in a suit, not for the purpose of asserting any public right or protecting any public interest, but merely to form a conduit through which one private person can conduct litigation against another person." *Id.* (quoting *Washington v. Vinther*, 29 P.2d 693, 394 (Wash. 1934)). Thus, the question is not whether "individuals might benefit specifically" from the lawsuit; the question is whether Washington is "acting in its sovereign capacity in furtherance of its public policy." *Id.* (quoting *Vinther*, 29 P.2d at 393).

Here, Washington is suing in the public interest to enforce its anti-discrimination laws. Indeed, it is only because of the public's interest in this suit that Washington has a cause of

---

[10] There may be limited circumstances in which a party can assert a laches defense against a government entity, but Defendant does not argue that those circumstances apply here. *See* An Nguyen, *It's About Time: Reconsidering Whether Laches Should Lie Against the Government*, 5 U. Ill. L. Rev. 2111, 2129–32 (2015).

action. *See City of Seattle v. McKenna*, 259 P.3d 1087, 1092 (Wash. 2011) (explaining that the attorney general may sue if (1) there is an underlying statutory cause of action and (2) the suit is on a matter of public concern). Given the public's interest in this suit, Washington is more than a mere formal plaintiff and the laches defense does not apply. This is true even if Plaintiff is suing to recover damages on behalf of individual claimants. *See LG Electronics*, 375 P.3d at 543. Accordingly, the Court GRANTS Plaintiff's motion for summary judgment as to this issue and DISMISSES Defendant's laches defense.

ii.    *Waiver, Ratification, Judicial Estoppel, Equitable Estoppel, and Unclean Hands*

Plaintiff argues that Defendant has not provided any evidence to show that Plaintiff waived its right to enforce its own laws, ratified Defendant's discriminatory actions, should be estopped from bringing claims against Defendant, or was somehow involved in Defendant's discriminatory actions. (*See* Dkt. No. 45 at 25–27.) Defendant appears to concede Plaintiff's argument but asserts that "these defenses are still applicable to the individual claimants themselves." (*See* Dkt. No. 52 at 18.) But as the party who "carries the burden of proof on an affirmative defense," *21st Mortg. Corp. v. Robertson*, 201 WL 3981176, slip op. at 5 (Wash. Ct. App. 2017) (citing *Rivas v. Overlake Hosp. Med. Ctr.*, 189 P.3d 753, 755 (Wash. 2008)), Defendant must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). Defendant has not offered evidence to establish a genuine issue as to its affirmative defenses of waiver, ratification, judicial estoppel, or unclean hands. The Court therefore GRANTS Plaintiff's motion for summary judgment as to this issue and DISMISSES those affirmative defenses.

iii.    *After-Acquired Evidence*

Plaintiff argues that the Court should dismiss Defendant's after-acquired evidence defense because "[Defendant] has not purported to identify any employee misconduct that would

have been separate grounds for termination." (Dkt. No. 45 at 27.) As with before, Defendant simply asserts that the defense could be applicable to the individual claimants. (*See* Dkt. No. 52 at 18.) This is not enough to survive summary judgment. *See Celotex*, 477 U.S. at 324. The Court therefore GRANTS Plaintiff's motion for summary judgment as to this issue and DISMISSES Defendant's after-acquired evidence defense.

*iv.     Failure to Mitigate*

Plaintiff also moves to dismiss Defendant's failure to mitigate defense. (*See* Dkt. No. 45 at 27–28.) Defendant argues that Ms. Richardson's deposition testimony creates a genuine issue of material fact as to whether she made a good faith effort to find a new job. (*See* Dkt. No. 52 at 18–19.) The key portion of Ms. Richardson's testimony is as follows:

> Q.     Did you ever look for other jobs in Seattle before you moved back [to Alabama]?
> A.     I tried Amazon, but that's it.
> Q.     Did you apply there?
> A.     Yes. They didn't have anything open, I guess.
> Q.     Where else did you apply after your employment at [Defendant] ended and before you moved back here?
> A.     I don't recall. I don't remember.
> It's -- really just didn't have time.

(Dkt. No. 54-9 at 6.) Plaintiff contends that despite this testimony, the Court should dismiss Defendant's failure to mitigate defense because Defendant has not introduced evidence showing that there were suitable alternative positions available to Ms. Richardson. (*See* Dkt. No. 61 at 12 n.6.) But in most federal circuits, a defendant need not prove that suitable alternative positions were available if the plaintiff fails to make a good-faith effort to find a new job. *See Wagner v. Dillard Dept's Stores, Inc.*, 17 F. App'x 141, 153–54 (4th Cir. 2001) ("Although an employer *ordinarily* must come forward with evidence that comparable work is available, that is not the case if the plaintiff makes little or no effort to seek employment.") (emphasis added); *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 16 (1st Cir. 1999); *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1998); *Waver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1527 (11th Cir. 1991);

*Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132, 1139 (5th Cir. 1988); *NLRB v. Madison Courier, Inc.*, 472 F.2d 1307, 1318 (D.C. Cir. 1972). The Court has not found a Washington case explicitly rejecting this rule, and the one Washington case that Plaintiff cites relied entirely on federal law to determine the contours of a failure to mitigate defense in WLAD cases. *See Burnside v. Simpson Paper Co.*, 832 P.2d 537, 549 (Wash. Ct. App. 1992). The Court therefore finds it appropriate to apply the prevailing federal rule in this case. Under that rule, summary judgment is inappropriate because a genuine issue of fact exists as to whether Ms. Richardson made a good faith effort to find a new job. Accordingly, the Court DENIES Plaintiff's motion for summary judgment as to this issue.

## III. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion (Dkt. No. 41), GRANTS Plaintiff's motion (Dkt. No. 45) in part, and DENIES Plaintiff's motion in part.

DATED this 18th day of February 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE