THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, | CASE NO. C17-1925-JCC |
| Plaintiff, | ORDER |
| v. | |
| MATHESON FLIGHT EXTENDERS, INC., | |
| Defendant. | |

This matter comes before the Court on Defendant Matheson Flight Extenders, Inc.'s motion to dismiss (Dkt. No. 95). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion for the reasons explained herein.

I.      BACKGROUND

Ambreada Richardson discovered she was pregnant in late June 2016. (Dkt. No. 1-2 at 4.) A few weeks later, Ms. Richardson presented her manager at Matheson Flight Extenders with a note from her doctor advising that Ms. Richardson should avoid lifting more than 30 pounds, avoid strenuous activity, and work only light duty. (*Id.*) Her manager replied that Matheson does not typically allow employees to modify their duties because they are pregnant, and within a few weeks, Matheson placed Ms. Richardson on an unpaid leave of absence. (*Id.*) Ms. Richardson moved to Alabama roughly three weeks later and Matheson fired her one month after that. (*Id.*)

In November 2017, the Washington State Attorney General's Office filed this suit against Matheson in King County Superior Court, alleging that Matheson has a policy or practice of discriminating against pregnant employees in violation of the Washington Law Against Discrimination's prohibitions on sex discrimination and disability discrimination. (*Id.* at 4–6.) The principal relief the State seeks is a permanent injunction prohibiting Matheson from continuing to engage in the allegedly discriminatory conduct and "damages or other appropriate monetary relief [for] each person aggrieved by [Matheson's policies and practices]." (*Id.* at 5–6.)

About a month later, Matheson removed the case to this Court and argued in response to the State's motion to remand that the Court had diversity jurisdiction because Ms. Richardson was the "real party in interest" and was a citizen of Alabama, while Matheson was a citizen of California. (*See* Dkt. Nos. 1, 8, 12 at 1.) Matheson argued that the Court could overlook the fact that the State was the named plaintiff because its only interest in the case—its interest in enforcing its antidiscrimination laws—was too general. (*See* Dkt. No. 12 at 4.) The Court agreed. (*See* Dkt. No. 16.)

Over the next several months, the parties litigated the case nearly all the way to trial: the parties completed discovery in July 2019 and filed motions for summary judgment in August 2019. (*See* Dkt. Nos. 38, 41, 45.) In September 2019, Matheson settled Ms. Richardson's individual claims. (*See* Dkt. No. 96-1 at 6–11.) In February 2020, the Court denied Matheson's motion for summary judgment and granted the State's motion in part. (Dkt. No. 65.) As the parties were preparing for trial, Matheson settled with the six other employees for whom the State sought damages.[1] (*See* Dkt. Nos. 96 at 2, 96-1.) Matheson now moves to dismiss because, it argues, the settlements have divested the Court of diversity jurisdiction because there is no longer a diverse real party in interest and the Attorney General's Office does not have authority to enforce WLAD. (*See* Dkt. No. 95.)

---

[1] The State does not mention these employees in the complaint but later informed Matheson that it intended to seek damages on their behalf. (*See* Dkt. No. 96-1 at 2.)

## II.   DISCUSSION

### A.   Legal Standard

Matheson makes two arguments, which require the Court to apply two distinct but similar legal standards. First, Matheson moves to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).[2] A party challenging subject-matter jurisdiction may do so via a facial attack or a factual attack. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121–22 (9th Cir. 2014). When a party brings a facial attack, the Court accepts the allegations in the relevant pleading as true and determines whether it has subject-matter jurisdiction based on the face of the document. *Id.* at 1121. "A 'factual' attack, by contrast, contests the truth of the . . . factual allegations, usually by introducing evidence outside the pleadings." *Id.* Matheson's motion is a factual attack because it relies on extrinsic evidence of events that occurred after the notice of removal was filed. When presented with a factual attack, the party asserting federal jurisdiction "must support [its] jurisdictional allegations with competent proof under the same evidentiary standard that governs the summary judgment context." *Id.* (internal citations and quotation marks omitted). Here, the material facts are undisputed.

Matheson's second argument is that the Attorney General's Office does not have "standing" to enforce WLAD because no statute expressly authorizes it to do so and the Attorney General does not have common law or constitutional powers. (*See* Dkt. No. 95 at 4–7.) Although Matheson characterizes this as a lack of standing, Matheson's argument is that the Attorney General lacks *statutory* standing to enforce WLAD, not that the Attorney General lacks *Article III* standing.[3] Because this argument does not implicate the Court's subject-matter

---

[2] Matheson purports to bring its motion "[p]ursuant to Rule 12(h)(3)," (Dkt. No. 95 at 1), but Rule 12(h)(3) does not provide an independent basis for a motion, it simply extends "the deadline for making a Rule 12(b)(1) motion," *Wood v. City of San Diego*, 678 F.3d 1075, 1082 (9th Cir. 2012).

[3] To the extent Matheson intends to challenge the Attorney General's Article III standing, that argument is squarely foreclosed by *Lucent*, the case on which it relies for its jurisdictional challenge. *See Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 738 (9th Cir.

jurisdiction, the Court does not analyze it under Rule 12(b)(1). Instead, Rule 12(c) applies.[4] *See Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980) (holding that courts should treat untimely motions to dismiss for failure to state a claim as motions for judgment on the pleadings). "Dismissal under Rule 12(c) is warranted when, taking the allegations in the complaint as true, the moving party is entitled to judgment as a matter of law." *Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1246 (9th Cir. 2017).

### B.    The Court has Subject-Matter Jurisdiction

For purposes of the present motion, the Court assumes without deciding that the evidence Matheson submitted in support of its Rule 12(b)(1) motion is competent and that the facts Matheson asserts are true. Even so, the Court has jurisdiction.

Matheson concedes that the Court had subject-matter jurisdiction at the time the case was removed but argues that its settlement with the employees for whom the State sought damages has divested the Court of jurisdiction. (Dkt. No. 95 at 7–8.) In Matheson's view, the Court does not have jurisdiction because "the circumstances that existed at the time of removal have changed." (*Id.* at 8 n.1.) But "[i]t is well-settled that the existence of complete diversity is assessed at the time of the filing of a complaint and that subsequent changes in the citizenship of an existing party do not affect the determination of jurisdiction." *In re Haw. Fed. Asbestos Cases*, 960 F.2d 806, 809–10 (9th Cir. 1992); *see also Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004) (courts must "measure[] all challenges to subject-matter jurisdiction

---

2011) (holding that the California Department of Fair Employment and Housing's interest in enforcing California's antidiscrimination laws made California "a real party in interest for purposes of standing").

[4] A Rule 12(b)(6) motion to dismiss for failure to state a claim must be filed "before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Matheson answered the complaint without moving to dismiss. (Dkt. No. 6.) Therefore, it is too late for Matheson to file a Rule 12(b)(6) motion. Even so, the defense of failure to state a claim may be raised "[a]fter the pleadings are closed" through a motion for judgment on the pleadings as long as it is filed "early enough not to delay trial." Fed. R. Civ. P. 12(c). Because no trial is currently scheduled, Matheson's motion is timely.

premised upon diversity of citizenship against the state of facts that existed at the time of filing").

Matheson argues that the time-of-filing rule does not apply here because the parties changed after removal, not just the citizenship of an existing party. (Dkt. No. 98 at 7.) But from the outset, the State of Washington has been the only plaintiff in this case. The Court looked to Ms. Richardson's citizenship initially because she was the real party in interest for purposes of diversity jurisdiction, but Ms. Richardson was never a party to the litigation. That the employees whose citizenship "counts" for purposes of diversity jurisdiction changed over the course of the litigation does not mean that the plaintiff itself has changed. In this regard, the State is similar to a partnership or another unincorporated entity. To determine a partnership's citizenship for purposes of diversity jurisdiction courts look to the citizenship of all of its partners. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 192–95 (1990). But, like every other litigant, a partnership's citizenship is determined at the time the complaint is filed and is treated as fixed for the duration of the litigation, even if its partners change. *Grupo Dataflux*, 541 U.S. at 575–80. So it is here. It is undisputed that the Court had diversity jurisdiction at the outset of the case and subsequent changes in the employees for whom the State sought damages does not divest the Court of jurisdiction.

### C.     The Attorney General is Authorized to Enforce WLAD

Matheson's argument regarding the Attorney General's authority to enforce WLAD also fails. Matheson argues that the Attorney General may not enforce WLAD because no statute expressly authorizes him to do so and the Attorney General does not have common law or constitutional powers. (*See* Dkt. No. 95 at 4–7.) But, as the State argues, the legislature has expressly authorized the Attorney General to "represent the state before the supreme court or the court of appeals in all cases in which the state is interested." Wash. Rev. Code § 43.10.030(1). The Washington Supreme Court has held that this statute "confers broader authority than the plain text indicates" and "grants the attorney general discretionary authority to act in any court,

state or federal, trial or appellate, on 'a matter of public concern.'" *City of Seattle v. McKenna*, 259 P.3d 1087, 1091–92 (Wash. 2011) (quoting *State v. Taylor*, 362 P.2d 247, 256 (Wash. 1961)). WLAD, in turn, provides that "discrimination against any of [the State's] inhabitants . . . [is] a matter of state concern." Wash. Rev. Code § 49.60.010. Therefore, the Attorney General is authorized to enforce WLAD.

Matheson does not contest this straightforward interpretation of these statutes, but argues that the Court should disregard their plain meaning because the doctrine of *expresio unius est exclusion alterius* compels the conclusion that the legislature *implicitly* prohibited the Attorney General from enforcing WLAD when it authorized the Washington State Human Rights Commission to do so. (*See* Dkt. No. 95 at 4–7.) The Court is not persuaded.

"Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986), *as modified*, 810 F.2d 1517 (9th Cir. 1987). Under Washington law, "if [a] statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *State ex rel. Citizens Against Tolls (CAT) v. Murphy*, 88 P.3d 375, 383–84 (Wash. 2004). Accordingly, the Washington Supreme Court has cautioned that "the maxim of express mention and implicit exclusion 'is to be used only as a means of ascertaining the legislative intent where it is doubtful, and not as a means of defeating the apparent intent of the legislature.'" *State v. Williams*, 617 P.2d 1012, 1016 (Wash. 1980) (quoting *De Grief v. Seattle*, 297 P.2d 940, 947 (Wash. 1956)). In *Williams*, the State argued that tape recordings federal agents made in violation of the Washington Privacy Act should not be suppressed because the Act did not apply to federal agents. *Id.* at 537. Although the Act applied to recordings made by "any individual," the State argued that the legislature implicitly excluded federal agents when it included "the state of Washington, its agencies, and political subdivisions" in the list of people and entities covered. *Id.* According to the State, the simultaneous inclusion of state agencies and the omission of federal agencies suggested that the legislature intended to

define "any individual" to exclude federal law enforcement agents, even though they would otherwise fall within the plain text of that provision. *Id.* The Court disagreed, holding that "[t]he maxim of express mention and implicit exclusion cannot be rigidly applied to exclude federal agents and thereby defeat the intent of the legislature." *Id.* at 537–38.

Matheson urges the Court to do here exactly what *Williams* cautioned against. The "apparent intent of the legislature" based on the plain text of WLAD and Washington Revised Code section 43.10.030(1) is to authorize the Attorney General to enforce WLAD. Matheson urges the Court to presume that the legislature implicitly cabined that plain text by expressly authorizing the Commission to enforce WLAD but not the Attorney General. Based on *Williams*, the Court concludes the Washington Supreme Court would be unlikely to do so. Thus, the Court concludes that the Attorney General is authorized to enforce WLAD based on the plain text of WLAD and Washington Revised Code section 43.10.030(1).

Because the Court concludes that Washington Revised Code section 43.10.030(1) authorizes the Attorney General to enforce WLAD, the Court need not address the State's alternative argument that the Attorney General falls within WLAD's authorization of a civil action by "any person deeming himself or herself injured by any act in violation of [WLAD]." Wash. Rev. Code § 49.60.030(2).

## III.   CONCLUSION

For the foregoing reasons, the Court DENIES Matheson's motion to dismiss (Dkt. No. 95).

DATED this 10th day of February 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
C17-1925-JCC
PAGE - 7